IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.                                                          CRIMINAL ACTION NO.: 2:09CR142

BARRY SMITH                                                                   DEFENDANT

MEMORANDUM OPINION

Barry Smith was indicted on October 8, 2009, for three counts of aiding and abetting the malicious destruction of property by means of fire. The Indictment alleges that Smith provided gasoline to Michael Guyton, Corey Jones, and Ketwon Bovan, knowing that they would use the gasoline to burn Shelby, Mississippi, aldermen Dan Harris' 1987 Nissan pickup truck, and Harold Billings' 1995 Chevrolet Blazer and 1995 Chevrolet Tahoe.

Smith filed a Motion to Suppress [22], and three Motions to Dismiss [25, 26, 27]. The Court held a hearing on April 27, 2010, and the parties have submitted additional briefing. After reviewing the motions, transcript, rules, and authorities, the Court finds as follows:

**I. Motion to Dismiss Indictment [26]**

Defendant seeks to dismiss the entire indictment, contending that 18 U.S.C. Section 844(i) is unconstitutional. In particular, Defendant argues that there is no rational basis for concluding that the arson of a vehicle sufficiently affects interstate commerce such that Congress has the power to regulate the conduct. See United States v. Lopez, 514 U.S. 549, 558, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995).

The United States Supreme Court has identified three broad categories of activity that Congress may regulate pursuant to its Commerce Clause powers: (1) the channels of interstate

1

commerce; (2) instrumentalities of interstate commerce and things and persons in interstate commerce; and (3) activities having a substantial relation to interstate commerce. Id. at 558-59, 115 S. Ct. 1624. Regarding the third category, the Supreme Court held that, to be within Congress' Commerce Clause powers, "the regulated activity must 'substantially affect' interstate commerce." Id. at 559, 115 S. Ct. 1624.

The Supreme Court in a later decision, United States v. Morrison, 529 U.S. 598, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000), revisited the third category of Commerce Clause regulation - activities substantially affecting interstate commerce. The Morrison Court identified four factors informing the constitutional analysis: (1) whether the statute regulates commercial activity; (2) whether the statute contains an express jurisdictional element; (3) whether the statute or its legislative history contains express congressional findings regarding the activity's effect on interstate commerce; and (4) whether the link between the activity and a substantial effect on interstate commerce is attenuated. Id. at 609-13, 120 S. Ct. 1740 (citations and internal quotation marks omitted).

Title 18 Section 844(i) provides:

(i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both . . .

Pursuant to the constitutional analysis laid out in Lopez and Morrison, the Court finds that Congress did not overreach its constitutional bounds in enacting 18 U.S.C. Section 844(i). First, the statute regulates commercial activity. The United States Supreme Court has interpreted Section

commerce; (2) instrumentalities of interstate commerce and things and persons in interstate commerce; and (3) activities having a substantial relation to interstate commerce. Id. at 558-59, 115 S. Ct. 1624. Regarding the third category, the Supreme Court held that, to be within Congress' Commerce Clause powers, "the regulated activity must 'substantially affect' interstate commerce." Id. at 559, 115 S. Ct. 1624.

The Supreme Court in a later decision, United States v. Morrison, 529 U.S. 598, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000), revisited the third category of Commerce Clause regulation - activities substantially affecting interstate commerce. The Morrison Court identified four factors informing the constitutional analysis: (1) whether the statute regulates commercial activity; (2) whether the statute contains an express jurisdictional element; (3) whether the statute or its legislative history contains express congressional findings regarding the activity's effect on interstate commerce; and (4) whether the link between the activity and a substantial effect on interstate commerce is attenuated. Id. at 609-13, 120 S. Ct. 1740 (citations and internal quotation marks omitted).

Title 18 Section 844(i) provides:

(i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both . . .

Pursuant to the constitutional analysis laid out in Lopez and Morrison, the Court finds that Congress did not overreach its constitutional bounds in enacting 18 U.S.C. Section 844(i). First, the statute regulates commercial activity. The United States Supreme Court has interpreted Section

844(i) as applying "only to property currently used in commerce or in an activity affecting commerce." Jones v. United States, 529 U.S. 848, 859, 120 S. Ct. 1904, 146 L. Ed. 2d 902 (2000). Moreover, that Court noted that Congress' intent in passing the law was "protecting all business property, as well as some additional property that might not fit that description, but perhaps not every private home." Russell v. United States, 471 U.S. 858, 862, 105 S. Ct. 2455, 85 L. Ed. 2d 829 (1985). In United States v. Shively, the Fifth Circuit upheld the constitutionality of convictions based on the defendants' destruction of a company vehicle and a home with an office under Section 844(i). 927 F.2d 804 (5th Cir. 1991). The Court advised that to fit within the federal arson statute, an interstate commerce link was easiest shown through business characteristics of a structure or automobile. See also United States v. Johnson, 194 F.3d 657 (5th Cir. 1999) (vacating the guilty plea of a defendant who set fire to a Methodist Church where the factual basis failed to establish a commercial pursuit).

Second, Section 844(i) contains an express jurisdictional element to ensure, through a case-by-case inquiry, that the criminal destruction by fire affects interstate commerce. See Lopez, 514 U.S. at 561-62, 115 S. Ct. 1624. The elements necessary to convict under the statute are that the defendant: (1) maliciously damaged or destroyed personal property; (2) that he did so by means of fire; and (3) that the property was either being used in interstate commerce or in an activity affecting interstate commerce. See 18 U.S.C. § 844(i); Johnson, 194 F.3d at 659 (holding that Section 844(i)'s interstate commerce requirement "while jurisdictional in nature, is merely an element of the offense, not a prerequisite to subject matter jurisdiction") (citing United States v. Rea, 169 F.3d 1111, 1113 (8th Cir. 1999); United States v. Nguyen, 28 F.3d 477 (5th Cir. 1994). Thus, interstate commerce is an express jurisdictional element of that statute.

Further, case law has established that Section 844(i) only applies where the arson and interstate commerce connection is not too attenuated. United States v. Corona, 108 F.3d 585 (5th Cir. 1987) (holding that Section 844(i) would not constitutionally apply to the arson of a private home simply because the home was connected to interstate natural gas lines). Analysis of the statute as applied proves that Congress' exercise of power under 844(i) has judicially enforceable outer limits. Lopez, 514 U.S. at 566, 115 S. Ct. 1624. In Jones, the Supreme Court considered the applicability of Section 844(i) to the arson of an owner-occupied home. 529 U.S. 848, 120 S. Ct. 1904. The Court ruled that an owner-occupied residence not used for any commercial purpose did not qualify as property used in commerce or commerce-affecting activity; thus, the arson of a dwelling was not subject to prosecution under the federal arson statute. In United States v. Jimenez, 256 F.3d 330 (5th Cir. 2001), the defendants firebombed a private residence in which the owner had his business office. The jury found that the family's home office was the primary location for their construction business; thus, the property substantially affected interstate commerce. The Fifth Circuit affirmed the decision and noted that "the proper inquiry . . . is into the function of the building itself, and then a determination of whether that function affects interstate commerce." Id. at 338 (citing Jones, 529 U.S. 848, 120 S. Ct. 1904).

Thus, the statute regulates commercial activity and contains an express jurisdictional element. Case law evidences the outside boundaries of this statute, and the link between the activity regulated and its effect on interstate commerce is not attenuated. See Morrison, 529 U.S. at 609-13, 120 S. Ct. 1740. This Court finds that Congress was within its constitutional parameters when enacting 18 U.S.C. Section 844(i) under the Commerce Clause.

**II. Motion to Dismiss Globally [27]**

Defendant claims that the Indictment should be dismissed in its entirety because the element of interstate commerce is absent. According to the Government, evidence at trial will show that all three vehicles were manufactured out of state; all three vehicles were used by the two Shelby, Mississippi, aldermen to get to and from their jobs as alderman; that the aldermen duties include daily activities affecting interstate commerce, including the oversight and management of the police department and administration of federal funds; and Shelby, Mississippi, is located on Highway 61, a major north/south thoroughfare. At least one of the vehicles, the 1995 Chevrolet Tahoe noticed in Count III, was used on trips out of state in connection with the owner's business.

As noted above, the Fifth Circuit has held that Section 844(i)'s interstate commerce requirement is "merely an element of the offense, not a prerequisite to subject matter jurisdiction." Johnson, 194 F.3d at 659 (citation omitted). Thus, whether the burning of the vehicles substantially affects interstate commerce is best left to the jury to address at trial, or the Court to address on Rule 29 after presentation of all the evidence.

**III. Motion to Dismiss Counts I and II [25]**

Defendant requests dismissal of Counts I and II based on an alleged mistake in the indictment. Specifically, Count I charges Defendant with maliciously destroying by means of fire alderman Dan Harris' 1987 Nissan pickup truck. Defendant asserts that based on the Government's Rule 16 disclosures, the Government does not have the title to the vehicle described in Count I. Thus, Defendant asserts, the indictment as to Count I must fail. Defendant also asserts that Count II should be dismissed because that count alleges the burning of Harold Billings' 1995 Chevrolet

Blazer. Based on the Government's disclosures, the 1995 Chevrolet Blazer is actually titled to Harold Billings, Jr. The Government counters that they are under no obligation to produce all discovery under Rule 16. Moreover, the elements do not oblige the government to prove clear title to the vehicle.

Defendant's motion appears to, in effect, challenge the sufficiency of the indictment. To be sufficient, an indictment must allege each material element of the offense; if it does not, it fails to charge that offense. See United States v. Gaytan, 74 F.3d 545, 552 (5th Cir. 1996); see also Russell v. United States, 369 U.S. 749, 763-64, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962) (noting that one criterion by which the sufficiency of an indictment is judged is "whether the indictment contains the elements of the offense intended to be charged") (quotation omitted) (citing cases); United States v. Deisch, 20 F.3d 139, 145 (5th Cir. 1994). This requirement stems directly from one of the central purposes of an indictment: to give the defendant notice of the offense charged. See, e.g., United States v. Chaney, 964 F.2d 437, 446 (5th Cir. 1992).

The elements of the offense are included in the indictment. Defendant's argument goes to the government's ability to prove its case. Ownership is neither an element to be proven nor is it material to the prosecution of the crime. Thus, Defendant's Motion to Dismiss Counts I and II is DENIED.

**IV. Motion to Suppress Interrogation Statements [22]**

Defendant asserts that the statements he gave FBI agents Anne M. Lahaye and Steven E. Thomason on August 11, 2009, must be suppressed because he was interrogated without receiving Miranda warnings. Statements obtained during a custodial interrogation without providing adequate warnings under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), are

6

inadmissible. Missouri v. Seibert, 542 U.S. 600, 608, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004). However, a defendant who voluntarily gives a statement to law enforcement in a non-custodial situation need not be advised of his Miranda rights. See Oregon v. Mathiason, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977). A person subject to interrogation by government agents must be Mirandized "only where there has been such a restriction on a person's freedom as to render him in custody." Id. at 495, 97 S. Ct. 711. A person not formally arrested is deemed to be in custody "when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." United States v. Courtney, 463 F.3d 333, 337 (5th Cir. 2006) (internal quotation marks and citation omitted).

In United States v. McLean, 2010 U.S. App. LEXIS 4943, *2-4 (5th Cir. Mar. 9, 2010), the Fifth Circuit affirmed the district court's denial of defendant's motion to suppress. In that case, the defendant was asked and agreed to answer questions in a nearby government building. He agreed and followed the agents to the building in his own car. The defendant was not arrested, handcuffed, frisked, searched, or removed from his car. Further, the testimony at the suppression hearing was that the agents were not in uniform during the questioning. The court heard testimony that all agents in the room with Mr. McLean were seated, were not surrounding him, and were not blocking the exit door. Finally, the court heard testimony that Mr. McLean voluntarily answered questions and never asked to leave. At the end of the interview, Mr. McLean left in his own car. The Court held that, under these circumstances, the district court did not err in denying the motion to suppress.

Here, Defendant claims that Bolivar County Sheriff's Deputy Charles Griffin asked Defendant to come down to the police station to discuss two homicides about which Defendant had

7

already given a statement. Defendant claims he was "lure[d] . . . by artifice to the interrogation location . . . ." Lahaye testified that it was necessary to bring Smith to the station under a ruse for his safety. Defendant testified that he did not immediately go to the station; he took care of his business and went in when he was ready. Once at the station, he contends Griffin took a "command lead" and lead him through the administrative building while another deputy, Jeff Joel, was directly behind Defendant at a very close distance. Defendant was never handcuffed. He observed the two deputies, and other deputies to have a "cool demeanor," and their presence at the station past five o'clock surprised him.

Defendant was led into a conference room. Defendant testified that Deputy Joel offered him jelly beans prior to the federal agents entering. Joel and Griffin left the room and Lahaye and Thomason entered and may or may not have closed the door behind themselves. Lahaye and Thomason sat across the table from Smith during the interview. Defendant testified that during the interview he felt he was just exchanging "law enforcement to law enforcement information" with Lahaye and Thomason.

Smith made some allegedly incriminating comments, at which time, Agent Lahaye testified, he became noticeably agitated, slouched over, and put his head in his hands. Lahaye testified that Agent Thomason and she began to feel uncomfortable based on the change in Smith's demeanor. Smith admitted that his demeanor did change during the interview. The testimony at the hearing indicates that Thomason then approached Smith, told him he was going to remove his weapon from him, and disarmed Smith. After the interview, Lahaye walked Smith out of the Sheriff's Department, Smith asked for his weapon to be returned, and Lahaye retrieved his weapon and returned it to him unloaded.

8

Defendant asserts that he was entitled to Miranda warnings. The Government responded that Defendant was never in custody and left the jail a free man; therefore, he was not due any warnings. Moreover, the Government counters that the interrogation was complete prior to the removal of Defendant's side arm. Based on the evidence presented at the hearing, Defendant was not in custody or in such a situation as a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.

Defendant walked out of the Sheriff's Department without being placed under arrest. Agent Thomason informed Smith that he was going to hold onto the weapon during the interview, and Smith agreed. Moreover, Defendant was not so subjectively threatened to shy away from requesting the return of his weapon. Defendant's statement was voluntarily given in a non-custodial situation; thus, Miranda warnings were not warranted in this situation. Accordingly, Defendant's Motion to Suppress is DENIED.

*Conclusion*

Title 18 U.S.C. Section 844(i) is a constitutional exercise of Congressional power under the Commerce Clause. Thus, Defendant's Motion to Dismiss the Indictment [26] is denied. The Government has made a sufficient showing, at this stage of the proceedings, to establish a sufficient interstate commerce connection. The Defendant's Motion to Dismiss Globally [27] is denied as well. Moreover, the Government has provided enough notice to Defendant regarding the vehicles alleged in the indictment. The Motion to Dismiss Counts I and II [25] is denied on this basis.

A reasonable person in the Defendant's position would not have understood his questioning to constitute a restraint on freedom of movement of the degree which the law associates with formal

9

arrest.  Accordingly, Defendant's Motion to Suppress [22] is also denied.

    SO ORDERED, this the 4TH day of May, 2010.

                                                **/s/ Sharion Aycock**
                                                **U.S. DISTRICT JUDGE**